UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THE HOWARD CARR
COMPANIES, INC.,

                    Plaintiff,

      -v-                                 1:19-CV-622

CUMBERLAND FARMS, INC.,
and FIRST HARTFORD REALTY
CORPORATION,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                         OF COUNSEL:

LAW OFFICE OF MURRAY S. CARR      JEFFREY L. ZIMRING, ESQ.
Attorneys for Plaintiff
1735 Central Avenue
Albany, New York 12205

GIRVIN, FERLAZZO LAW FIRM         PATRICK J. FITZGERALD, III, ESQ.
Attorneys for Defendants               DANIEL RUBIN, ESQ.
20 Corporate Woods Boulevard
Albany, NY 12211

DAVID N. HURD
United States District Judge

## <u>MEMORANDUM–DECISION and ORDER</u>

## I. <u>INTRODUCTION</u>

      On April 26, 2019, plaintiff Howard Carr Companies, Inc. ("the Howard Group" or

"plaintiff") filed this action in Supreme Court, Albany County, against defendants Cumberland

Farms, Inc. ("Cumberland") and First Hartford Realty Corporation ("First Hartford") seeking

real estate commissions valued at just over $1 million.

On May 24, 2019, Cumberland and First Hartford (collectively "defendants") removed the suit to federal court.  After plaintiff amended its pleading, defendants moved under Federal Rule of Civil Procedure ("Rule") 12(b)(6) to dismiss the operative complaint.  The motion has been fully briefed and will be considered on the basis of the submissions without oral argument.

## II.  **BACKGROUND**[1]

The Howard Group is a New York corporation that operates a real estate brokerage in Albany, New York.  Am. Compl. ¶¶ 1-4.  Cumberland is a Delaware corporation that manages a chain of convenience stores out of its headquarters in Massachusetts.  *Id*. ¶¶ 5-8. And First Hartford is a Delaware corporation that runs a commercial real estate development business from its main office in Connecticut.  *Id*. ¶¶ 10, 12.  According to plaintiff, First Hartford enjoys an "exclusive development agreement" with Cumberland for the purpose of developing sites for new stores in Upstate New York.  *See id*. ¶ 14.

On June 12, 2013, defendants "engaged" the Howard Group "for the purpose of locating potential sites" on which Cumberland could build some new convenience stores.  Am. Compl. ¶¶ 15-16.  Defendants provided plaintiff with "siting and other locational criteria required for the development" of these stores.  *Id*. ¶ 17.  Thereafter, plaintiff identified "at least 116 sites that satisfied the criteria."  *Id*. ¶ 18; *see also id*. ¶ 19 (listing street addresses).  Plaintiff alleges that it "escorted personnel employed by" defendants to each one of these locations and "informed the defendants of the acquisition cost for each of the aforementioned sites."  *Id*. ¶¶ 20-21.

---

[1]  The following facts are taken from the Howard Group's First Amended Complaint, Dkt. No. 21, and are assumed true for the purpose of resolving defendants' motion to dismiss.

The Howard Group alleges that defendants have acquired control of, and built or intend to build new stores on, at least 11 of these 116 sites.  Am. Compl. ¶¶ 22 (listing street addresses).  Plaintiff alleges that it expected compensation in the amount of $1,116,446.00, but has only been paid $71,625.00.  *Id*. ¶¶ 23-28.  According to plaintiff, it is therefore entitled to judgment in the amount of $1,044,820.00.  *Id*. ¶ 29.

## III.  LEGAL STANDARD

"To survive a Rule 12(b)(6) motion to dismiss, the '[f]actual allegations must be enough to raise a right to relief above the speculative level.'"  *Forjone v. Dep't of Motor Vehicles*, 414 F. Supp. 3d 292, 298 (N.D.N.Y. 2019) (quoting *Ginsburg v. City of Ithaca*, 839 F. Supp. 2d 537, 540 (N.D.N.Y. 2012)).  "Dismissal is appropriate only where plaintiff has failed to provide some basis for the allegations that support the elements of his claims."  *Id*.

"When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor."  *United States v. Bedi*, 318 F. Supp. 3d 561, 564-65 (N.D.N.Y. 2018) (citation omitted).  "In making this determination, a court generally confines itself to the facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken."  *Forjone*, 414 F. Supp. 3d at 298 (citation and internal quotation marks omitted).

## IV.  DISCUSSION

This is actually the second time the Howard Group has come to court trying to collect on these unpaid real estate commissions.  Both times, plaintiff's suit began in Supreme Court, Albany County.  Both times, Cumberland and First Hartford removed the case to this federal judicial district.  And both times, the parties' dispute landed in this Court.

## A. The First Litigation is Filed

The Howard Group's first lawsuit arrived in December of 2018, assigned to this Court after defendants removed it on the basis of complete diversity of citizenship. *Howard Carr Cos., Inc. v. Cumberland Farms, Inc. et al.*, 1:18-CV-1414-DNH-CFH (the "First Litigation") at Dkt. No. 1. Defendants immediately moved to dismiss under Rule 12(b)(6). *Id*. at Dkt. No. 6.

According to defendants' motion, the Howard Group's pleading ran afoul of New York Real Property Law ("RPL") § 442-d, which requires a plaintiff that wants to sue for unpaid real estate commissions to plead and prove that it is a duly licensed real estate broker. First Litig. at Dkt. No. 6. Beyond that threshold defect, defendants argued the complaint also failed to identify the terms of the alleged brokerage agreement between the parties. *Id*.

In opposition to dismissal, the Howard Group expressly disavowed the notion that its claim was based on any written agreement. First Litig. at Dkt. No. 10. Instead, plaintiff explained, it was merely seeking equitable relief in *quantum meruit* for the reasonable value of the services it had rendered on defendants' behalf. *Id*. According to plaintiff, it was not looking to recover any real estate commissions *per se*, just monetary compensation for the fair value of its work. *See id*.

## B. The First Litigation is Dismissed

On February 15, 2019, the Court rejected those arguments and granted defendants' motion to dismiss. *Howard Carr Cos., Inc. v. Cumberland Farms, Inc.* ("*Howard Carr I*"), 359 F. Supp. 3d 188 (N.D.N.Y. 2019). Although it acknowledged that *quantum meruit* could

theoretically provide relief under the slightly unusual factual scenario[2] presented in the

complaint, *Howard Carr I* rejected plaintiff's attempt to evade the pleading requirement

imposed by RPL § 442-d by characterizing its services as that of a "finder" rather than a

"broker."  *Id*. at 193-95.  And because plaintiff had failed to allege that it was a duly licensed

real estate broker in accordance with § 442-d, the complaint had to be dismissed.  *Id*. at 195.

Importantly for present purposes, *Howard Carr I* refused to grant the Howard Group's

conditional request to amend the pleading.  359 F. Supp. 3d at 195.  The reasoning was

twofold:  first, plaintiff had not bothered to follow Local Rule 7.1(a)(4), which requires a party

to submit a proposed amended complaint; and second, plaintiff had not given any indication

that it actually *was* a duly licensed broker during the time period in question.  *Id*.

As to that latter bit of rationale, *Howard Carr I* found it noteworthy that the Howard

Group had not once represented to the Court that it possessed a real estate license despite

the issue of its licensure status having been squarely presented in defendants' initial moving

papers.  *See Howard Carr* I, 359 F. Supp. 3d at 195.

Indeed, as defendants had emphasized in their reply memorandum, the Howard

Group appeared to have done its level best *not* to make that kind of affirmative

representation.  *Howard Carr I*, 359 F. Supp. 3d at 195 (quoting First Litig. at Dkt. No.

11).  Accordingly, the complaint was dismissed without leave to amend.  *Id*.; *see also* First

Litig. at Dkt. No. 13 (entering judgment in favor of defendants).

---

[2]  The parties agreed that New York law governed the claim, but were mired in an ancillary dispute
about whether defendants could be liable in *quantum meruit* where, as here, plaintiff had initially expected
compensation would come from a third party; *i.e.*, plaintiff believed it would be paid by the owners of the
various sites identified for acquisition, not directly by defendants.  *Howard Carr I*, 359 F. Supp. 3d at 192-94.

## C. **The Second Litigation is Filed**

The Howard Group filed a notice of appeal from *Howard Carr I*'s dismissal of the First Litigation. First Litig. at Dkt. No. 15. Apparently, however, plaintiff did not want to wait around for the Second Circuit to weigh in. Instead, plaintiff went ahead and filed a nearly identical lawsuit—this one—on April 29, 2019.[3] *The Howard Carr Cos., Inc. v. Cumberland Farms, Inc. et al.*, 1:19-CV-622-DNH-CFH at Dkt. No. 1.[4]

As before, the Howard Group's second lawsuit was filed in Supreme Court, Albany County. Dkt. No. 1. And just like the first case, plaintiff named Cumberland and First Hartford as the defendants. *Id*. Plaintiff also asserted the same claim for relief (sounding in *quantum meruit* and based on unpaid commissions) arising out of the same fact pattern alleged in the First Litigation (defendants' acquisition of a subset of development sites first identified by plaintiff's efforts). *Id*. Of course, defendants quickly filed a notice of removal and brought this case to federal court, too.

Unlike the First Litigation, though, the Clerk of the Court initially assigned the Howard Group's second suit to Senior U.S. District Judge Thomas J. McAvoy. Although Judge McAvoy denied an early bid by defendants to transfer the case to the undersigned in light of *Howard Carr I*, he later relented, and the matter was reassigned and stayed pending the outcome of plaintiff's appeal from *Howard Carr I*'s dismissal in the First Litigation. Dkt. Nos. 10, 14.

---

[3] The new pleading includes details about the alleged sites identified by plaintiff and acquired by defendants for development, but the crucial difference between the two suits is that this time plaintiff alleged it "was duly licensed to transact business as a real estate broker . . . under license number 109908417 issued by the New York Department of State." Dkt. No. 2 ¶ 4; Dkt. No. 21 ¶ 4.

[4] Direct citations to docket entries correspond with this action.

On November 5, 2019, the Second Circuit affirmed the dismissal order entered in the First Litigation.  *Howard Carr Cos., Inc. v. Cumberland Farms, Inc.* ("*Howard Carr II*"), 783 F. App'x 80 (2d Cir. 2019).  The panel rejected a renewed attempt by the Howard Group to sidestep the pleading requirement of RPL § 442-d by characterizing itself as a "finder" seeking only *quantum meruit* relief for its services.  *Id*. at 81-82.  *Howard Carr II* went on to reject plaintiff's assertion that it should have been permitted to amend.  *Id*. at 82.  The mandate issued on November 26, 2019.  First Litig. at Dkt. No. 16.

### D.  Defendants' Motion to Dismiss

That should probably have been the end of both cases.  However, the Howard Group refused to voluntarily dismiss the second action, so the Court lifted the stay and reset the answer deadline.  Dkt. Nos. 17, 19.  When defendants moved to dismiss, plaintiff amended its pleading as of right.  Dkt. Nos. 20, 21, 24.  Thereafter, defendants moved against the amended complaint.  Dkt. No. 26.

In their renewed motion to dismiss, defendants argue that *res judicata* bars the Howard Group from bringing this suit.  Defs.' Mem., Dkt. No. 25 at 7.[5]  Defendants point out that the pleading in this second case names the same parties, alleges the same facts, and raises the same claim for *quantum meruit* as the complaint that was dismissed in the First Litigation.  *Id*. at 12.

Defendants acknowledge that the Howard Group's new pleading also alleges that plaintiff is a duly licensed real estate broker in apparent satisfaction of RPL § 442-d, but argue it is far too late to make that representation now.  Defs.' Mem. at 10.  According to

---

[5]  Pagination corresponds to CM/ECF.

defendants, *Howard Carr I*'s dismissal without leave to amend—and the Second Circuit's affirmance in *Howard Carr II*—amounts to a "final judgment on the merits" that bars this suit. *Id*. at 12-16.

In opposition, the Howard Group insists that *Howard Carr I* has no *res judicata* effect because New York law permits a plaintiff to re-file suit where, as here, the complaint was dismissed for a pleading defect. Pl.'s Mem., Dkt. No. 27 at 7-11. According to plaintiff, the Supreme Court made clear in *Semtek Int'l, Inc. v. Lockheed Martin Corp.* ("*Semtek*"), 531 U.S. 497 (2001), that district courts must look to state law, not federal law, when analyzing the preclusive effect of the dismissal of a state-law claim in a diversity case. *Id*. at 7-8.

In reply, defendants argue *Semtek* is inapplicable because "it did not consider what preclusive effect a federal district court can or should give its *own* prior decision dismissing a counseled litigant's complaint on the merits and with prejudice, in part due to that litigant's intentional failure to remedy its defective pleadings." Defs.' Reply, Dkt. No. 28 at 6-7.

The parties' dispute tees up an interesting legal question. After all, "[t]he federalistic aspects of res judicata are nowhere more bewildering than in addressing the broad question whether state law should affect the rules applied to federal adjudication of questions controlled by state law." 18B Charles Alan Wright et al., *Federal Practice & Procedure* § 4472. Upon careful review of the governing legal principles, however, defendants are correct: *res judicata* bars this second suit.[6]

---

[6] "A court may consider a *res judicata* defense on a Rule 12(b)(6) motion to dismiss when the court's inquiry is limited to the plaintiff's complaint, documents attached or incorporate therein, and materials appropriate for judicial notice." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 498 (2d Cir. 2014); *see also Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992) ("[W]hen all relevant facts are shown by the court's own records, of which the court takes notice, the defense [of *res judicata*] may be upheld on a Rule 12(b)(6) motion without requiring an answer.").

As a general matter, "[t]he preclusive effect of a judgment is defined by claim preclusion and issue preclusion." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008).  "Under the doctrine of *res judicata*, or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *TechnoMarine SA*, 758 F.3d at 499 (quoting *St. Pierre v. Dyer*, 208 F.3d 394, 399 (2d Cir. 2000)).

"The Second Circuit has enumerated four conditions to be analyzed when determining whether *res judicata* applies:  (1) the earlier decision was a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the same parties or their privies were involved; and (4) the decision involved the same cause of action." *Overview Books, LLC v. United States*, 755 F. Supp. 2d 409, 415 (E.D.N.Y. 2010), *aff'd*, 438 F. App'x 31 (2d Cir. 2011) (summary order).

The second, third, and fourth elements of this test are all satisfied.  *Howard Carr I* was a valid exercise of diversity jurisdiction, since the litigants were (and still are) considered "citizens" of different states, and the amount in controversy did (and still does) exceed the sum of $75,000.  The first and second lawsuits involve the same parties.  And both suits raise the same state-law claim for *quantum meruit* relief based on the same alleged facts.  Accordingly, the only question left to decide is the first one:  was the dismissal in the First Litigation a "final judgment on the merits" for purposes of *res judicata*?

Ordinarily, the answer to this question is a clear yes.  "As the sufficiency of a complaint to state a claim on which relief may be granted is a question of law, the dismissal for failure to state a claim is a final judgment on the merits and thus has res judicata effects." *Berrios v. N.Y. City Hous. Auth.*, 564 F.3d 130, 134 (2d Cir. 2009) (cleaned up).

- 9 -

That remains true even though *Howard Carr I* did not include the phrase "with prejudice," since the Court expressly denied plaintiff's request to amend the complaint and then directed the Clerk to enter a judgment dismissing the action.  First Litig. at Dkt. No. 13.  Where, as here, dismissal was granted for reasons other than a lack of jurisdiction, simultaneously denying a request to amend the pleading *obviously* results in a dismissal "with prejudice."  *Cf. Solis v. Global Acceptance Credit Co., L.P.*, 601 F. App'x 767, 770 (11th Cir. 2015) (per curiam) ("The court's intent to dismiss the action on the merits and with prejudice is shown by its denial of leave to amend based on futility.").

This conclusion seems especially logical where, as here, the Howard Group took a direct appeal.  Although in the federal system "dismissals with and without prejudice are equally appealable as final orders," *Allied Air Freight, Inc. v. Pan. Am. World Airways, Inc.*, 393 F.2d 441, 444 (2d Cir. 1968), under plaintiff's theory it could have just filed the second suit without ever going to the trouble of appealing the dismissal of the first one.

As one treatise explains, "[h]aving brought suit, the plaintiff should be prepared to plead a valid claim, to persuade the court that amendment should be granted, to demonstrate valid reasons for dismissal without prejudice to a second action, or be barred."  18A Charles Alan Wright et al., *Federal Practice & Procedure* § 4439.

*Howard Carr I* concluded that the Howard Group had failed to plead a valid claim, had failed to persuade the Court that amendment should be granted, and had failed to demonstrate a valid reason why the dismissal should have been without prejudice to a second action.  Although it was absolutely appropriate for plaintiff to try convincing the Second Circuit to reverse and remand for further consideration as to any or all of those aforementioned issues, the appellate court's affirmance in *Howard Carr II* makes clear that

plaintiff failed to do so.  Accordingly, it makes perfect sense that plaintiff should now "be barred" from commencing further litigation with the same parties on the same claim.

Even so, the Howard Group argues that the Supreme Court's decision in *Semtek* mandates a different result.  In *Semtek*, the petitioner initially filed suit in California state court alleging breach of contract and other state law claims.  531 U.S. at 499.  After removing the case to California federal court on the basis of diversity jurisdiction, the respondent won dismissal because the petitioner's claims were all time-barred by California's two-year statute of limitations.  *Id*.  The California federal court dismissed the petitioner's claims "in [their] entirety on the merits and with prejudice."  *Id*.  The federal appeals court affirmed.  *Id*.

Thereafter, the petitioner filed a second suit on the same claims in Maryland state court, a jurisdiction governed by a longer, three-year statute of limitations.  *Semtek*, 531 U.S. at 499.  Following some irrelevant procedural wrangling in courts on both coasts, the respondent eventually convinced the Maryland state court that the California federal court's prior dismissal of the first suit had preclusive effect on the second one.  *Id*. at 500.  A Maryland state appeals court affirmed, reasoning that "the *res judicata* effect of federal diversity judgments was prescribed by federal law, under which the earlier dismissal was on the merits and claim preclusive."  *Id*. at 501.

The Supreme Court granted *certiorari* and reversed, but *Semtek*'s reasoning is not as helpful to the Howard Group's argument as plaintiff seems to think.  After an extended discussion of various decisional and statutory developments that had taken place in the many years since *Dupasseur v. Rochereau*, 21 Wall. 130, 135 (1874), Justice Scalia's majority opinion in *Semtek* emphasized an important distinction between the sort of backward-looking "finality" that might attach when litigation is brought to completion in one

court and the forward-looking claim-preclusive effect that kind of "final" adjudication might have if the same dispute were brought again elsewhere.  *Semtek*, 531 U.S. at 505.

As Justice Scalia explained, while the California federal court's dismissal of the first action obviously "barred refiling of the same claim" in *that* federal judicial district, it did not necessarily follow that the dismissal would have "claim-preclusive effect in other courts."  *Semtek*, 531 U.S. at 506.

On that broader question, *Semtek* concluded that "federal common law governs the claim-preclusive effect [in other courts] of a dismissal by a federal court sitting in diversity."  531 U.S. at 508.  However, the Court in *Semtek* declined to craft a uniform federal rule for that scenario.  *Id.*  Instead, *Semtek* held that federal common law incorporates the claim preclusion rules "that would be applied by state courts in the State in which the federal diversity court sits."  *Id*. at 508.

Applying the new rule to the facts before it, the Supreme Court concluded that the Maryland appeals court had erred in dismissing the petitioner's second claim as *res judicata*, since under California law a dismissal of the first suit on statute-of-limitations grounds would not have claim-preclusive effect elsewhere.  *Semtek*, 531 U.S. at 509.

*Semtek* sets up a bit of a circular exercise in this case, since "[t]he preclusive effect of a federal-court judgment is determined by federal common law."  *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008) (citing *Semtek*, 531 U.S. at 507-08).  However, "[f]or judgments in diversity cases, federal [common] law incorporates the rules of preclusion applied by the State in which the rendering court sits."  *Id*. at 891 n.4.  Accordingly, New York law determines the claim-preclusive effect of the federal diversity judgment in the First Litigation.

Relying on *Semtek*, the Howard Group argues that New York law does not bar it from maintaining this second suit.  According to plaintiff, "New York courts have consistently allowed plaintiffs to re-file complaints that have been dismissed when the dismissal did not address the merits of the claims in the dismissed complaint and the new complaint resolves the deficiency that led to the dismissal."  Pl.'s Mem. at 9-10

It is true that New York has adopted a more forgiving approach to pre-answer motions to dismiss.  *See* Siegel, *N.Y. Practice* § 276; *see also Williams v. Citigroup Inc.*, 659 F.3d 208, 215 n.4 (2d Cir. 2011) (noting that New York's pleading standard "is more lenient than the 'plausibility' standard applicable in federal courts").

"Under New York law, a dismissal pursuant to N.Y.C.P.L.R. 3211(a)(7), for failure to state a cause of action, is presumptively not on a case's merits and lacks *res judicata* effect; indeed a Rule 3211(a)(7) dismissal is only on a [case's] merits if the rendering court explicitly says so."  *DDR Constr. Servs., Inc. v. Siemens Indus., Inc.*, 770 F. Supp. 2d 627, 647 (S.D.N.Y. 2011) (citations omitted).

As the Appellate Division has explained, "[t]his rule has its genesis in the combined impact of the common-law [principle] that only a final judgment on the merits can be given full res judicata effect and the restriction contained in CPLR 5013, which provides, [a] judgment dismissing a cause of action before the close of the proponent's evidence is not a dismissal on the merits unless it specifies otherwise."  *Plattsburgh Quarries, Inc. v. Palcon Indus., Inc.*, 513 N.Y.S.2d 861, 862 (N.Y. App. Div. 3d Dep't 1987) (citation and internal quotation marks omitted)).

Ultimately, however, the precise contours of the CPLR's dismissal statute do not control the *res judicata* question presented by this case.  It is one thing to apply state-law

claim preclusion principles as a matter of federal common law in accordance with *Semtek*; it is something else entirely to imagine a counterfactual scenario in which *Howard Carr I* was decided under the CPLR rather than the Federal Rules of Civil Procedure.[7]

As *Semtek* instructs, "[t]he law governing the doctrine of *res judicata* in a diversity action is 'the law that would be applied by state courts in the State in which the federal diversity court sits.'" *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 195 (2d Cir. 2010) (quoting *Semtek*, 531 U.S. at 508); *see also NAS Elecs., Inc. v. Transtech Elecs. PTE LTD.*, 262 F. Supp. 2d 134, 143 (S.D.N.Y. 2003) ("[T]he rule announced in *Semtek* applies to the situation in this case, where the preclusive effect of a federal decision in a diversity case is being litigated in federal court.").

"Under New York law, the transactional approach to res judicata prevents the parties to the prior action or those in privity with them from raising in a subsequent proceeding any claim they could have raised in the prior one, where all of the claims arise from the same underlying transaction." *NAS Elecs., Inc.*, 262 F. Supp. 2d at 144 (cleaned up) (collecting cases).

As relevant here, "[t]he policy against relitigation of adjudicated disputes is strong enough generally to bar a second action even where further investigation of the law or facts indicates that the controversy has been erroneously decided, whether due to oversight by the

---

[7] Although the Howard Group does not appear to directly make this claim, plaintiff's heavy reliance on the CPLR certainly seems to disregard the reality of what happened in the First Litigation.  "Under the Erie doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996).  It makes no difference that "some of those rules will inevitably differ from comparable state rules." *Hanna v. Plumer*, 380 U.S. 460, 473 (1965).  After all, "[e]very procedural rule may have a substantive impact because every procedural rule makes it either easier or more difficult to prove a case." *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.*, 133 F. Supp. 2d 162, 173 (E.D.N.Y. 2001).

parties or error by the courts." *NAS Elecs., Inc.*, 262 F. Supp. 2d at 143 (quoting *Reilly v. Reid*, 45 N.Y.2d 24, 28 (N.Y. 1978)).  Indeed, "[c]onsiderations of judicial economy as well as fairness to the parties mandate, at some point, an end to litigation."  *Reilly*, 45 N.Y.2d at 28.

Applied to this case, New York's law on *res judicata* bars the Howard Group from continuing to litigate this claim.  The first and second lawsuits have the same named plaintiff and the same named defendants.  Both suits assert the same *quantum meruit* claim for unpaid real estate commissions based on plaintiff's identification of sites for new convenience stores, and defendants' subsequent acquisition of a subset of those sites for commercial development.

The parties' dispute over that transaction, or series of transactions, was decided in favor of defendants in *Howard Carr I*, which dismissed the matter with prejudice when it denied leave to amend and entered a judgment.  Under the Federal Rules of Civil Procedure, that dismissal was final and on the merits.  *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981) ("The dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a 'judgment on the merits.'").

The same would be true under the CPLR.  Although New York's pre-answer dismissal statute might *presumptively* provide for a different result, a state court dismissal that explicitly denies leave to amend also constitutes a dismissal with prejudice; *i.e.*, it is still a final judgment on the merits for *res judicata* purposes under New York law.

For instance, the New York Court of Appeals has held that "CPLR 5013 does not require that the prior judgment contain the precise words 'on the merits' in order to be given *res judicata* effect; it suffices that it appears from the judgment that the dismissal was on the merits." *Strange v. Montefiore Hosp. & Med. Ctr.*, 59 N.Y.2d 737 (N.Y. 1983) (analyzing

language in context of summary judgment).  The Court of Appeals has also explained that "[a] dismissal 'with prejudice' generally signifies that the court intended to dismiss the action 'on the merits,' that is, to bring the action to a final conclusion against the plaintiff."  *Yonkers Contracting Co., Inc. v. Port Auth. Trans-Hudson Corp.*, 93 N.Y.2d 375, 380 (N.Y. 1999) (citations omitted).

Lower courts in New York have relied on this language to reach the same conclusion even when faced with litigation in other procedural postures.  For example, in *Aard-Vark Agency, Ltd. v. Prager*, the Second Department reversed a trial court's conclusion that *res judicata* did not bar certain counterclaims even though they had been dismissed "with prejudice" in a prior action.  779 N.Y.S.2d 213, 213-14 (N.Y. App. Div. 2d Dep't 2004).

Citing the New York Court of Appeals' decision in *Yonkers Contracting Co., Inc.*, the Appellate Division found that the prior action had dismissed the counterclaims with prejudice and without leave to replead.  *Aard-Vark Agency, Ltd.*, 779 N.Y.S.2d at 214.  According to the Appellate Division, dismissal in this manner "signifie[d] that the [trial court] intended the dismissal to be on the merits or, put differently, to bring the defendants' claims to a final conclusion."  *Id*.

The same logic holds true in this case.  And even assuming the Howard Group could have just re-filed the claim after this Court's dismissal without leave to amend in *Howard Carr I*, plaintiff took an appeal instead.[8]  Thereafter, the Second Circuit's subsequent decision in *Howard Carr II* brought the litigation over that claim to its end.  *See Yonkers Contracting Co., Inc.*, 93 N.Y.2d at 380; *see also Weston Funding Corp. v. Lafayette Towers, Inc.*, 550

---

[8] "In New York, the pendency of an appeal does not alter the *res judicata* effect of the challenged judgment." *Brown v. Mfrs. Trust Co.*, 602 F. Supp. 549, 551 (S.D.N.Y. 1984).

F.2d 710, 714 (2d Cir. 1977) (reiterating Supreme Court's admonition that "[i]t is a misconception of res judicata to assume that the doctrine does not come into operation if a court has not passed on the 'merits' in the sense of the ultimate substantive issues of a litigation").  Accordingly, New York's law on *res judicata* bars this suit.

To permit the Howard Group to litigate a second lawsuit about the same facts against the same defendants in the same federal court merely because the Court was sitting in diversity "would be to permit an absurd waste of judicial resources and remove any sense of finality from federal court judgments."  *Mahmood v. Research in Motion Ltd.*, 905 F. Supp. 2d 498, 506 (S.D.N.Y. 2012).

*Semtek* certainly does not support that approach.  In fact, regardless of whether *Semtek* might require the result advocated by the Howard Group in some other instance, it explicitly forbids it in this situation—*Semtek* itself recognized that the California federal court's dismissal of the petitioner's first claim would "undoubtedly" have had claim-preclusive effect in the event the petitioner had tried to re-file "the same claim" a second time in that same California federal court.  531 U.S. at 506.  That is exactly the situation presented here:  plaintiff has re-filed the same claim against the same parties in the same federal judicial district.  Accordingly, it is precluded for this reason as well.

And if that were not enough, *Semtek* also left the door open to situations "in which the state law is incompatible with federal interests," and in those cases accepted the possibility that "federal courts' interest in the integrity of their own processes might justify a contrary federal rule."  531 U.S. at 509.  Indeed, the New York Court of Appeals has recently observed that a federal case might well arise in which state-law preclusion principles might need to be displaced for that purpose.  *Paramount Pictures Corp. v. Allianz Risk Transfer*

*AG*, 31 N.Y. 3d 64, 71 (N.Y. 2018) (examining *Semtek* to analyze preclusive effect of a prior federal judgment based on a mix of federal-question and supplemental jurisdiction).   Thus, even assuming New York law provided for a contrary result, this Court's interest in policing the integrity of its own docket would outweigh it under these circumstances.

## V.  **CONCLUSION**

At first blush, the Howard Group's continued opposition to dismissal seemed like it might have been based on a simple misreading of *Semtek*.   But as the final two points in this discussion show, *Semtek* unequivocally recognized that, regardless of the claim preclusion question the re-filed suit might raise in another forum, a plaintiff could not simply re-file the same dismissed claim against the same parties in the same federal court.   531 U.S. at 506.

So one is left to wonder what the Howard Group was thinking when it refused to dismiss this suit after the Second Circuit decided *Howard Carr II*.   Perhaps plaintiff believed that surviving a motion to dismiss might provide sufficient leverage to force defendants into a settlement.   That approach might fly in state court, but it is an impermissible litigation strategy under these circumstances.

In reaching that conclusion, the Court recognizes that "if applied too rigidly, res judicata has the potential to work considerable injustice." *Landau, P.C. v. LaRossa, Mitchell & Ross*, 862 N.Y.S.2d 316 (N.Y. 2008).   But plaintiff has attempted to relitigate the same claim against the same parties in the very same federal judicial district after losing on appeal.   Accordingly, there is no injustice in this result.

Therefore, it is

ORDERED that

1.  Defendants' motion to dismiss is GRANTED; and

- 18 -

2. Plaintiff's complaint is DISMISSED.

The Clerk of the Court is directed to enter a judgment accordingly and to close the file.

IT IS SO ORDERED.


Dated:  April 21, 2020
        Utica, New York.

                                         United States District Judge